IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HEBRON COMMUNITY
METHODIST CHURCH,
*a Wisconsin incorporated
religious society*,

                Plaintiff,

   v.

WISCONSIN CONFERENCE
BOARD OF TRUSTEES OF
THE UNITED METHODIST
CHURCH, INC. and STACI
M. HOFFMAN *in her official
Capacity as Register of Deeds for
Jefferson County, Wisconsin*,

                Defendants.

OPINION AND ORDER

22-cv-037-wmc

---

      Hebron Community Methodist Church ("Hebron") brought suit against the Wisconsin Conference Board of Trustees of the United Methodist Church, Inc. ("the Conference") and Jefferson County Register of Deeds Staci Hoffman seeking to quiet title on the church's property. Specifically, Hebron seeks a declaration that Wis. Stat. § 187.15(4), which essentially directs that the real and personal property of any local Methodist church "shall rest" upon its dissolution in the Conference, "violates the Establishment Clause and Association Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Substantive Due Process within the Fifth and Fourteenth Amendments of the United States Constitution." (Am. Compl. (dkt. #43) 1-2.) However, because Hebron has not pleaded a viable claim to ownership of

the property at issue, even if that statute were not enforceable, the court must grant the Conference's pending motion to dismiss without addressing this constitutional issue.

## BACKGROUND[1]

Hebron Community Methodist Church is a religious society located in Fort Atkinson, Wisconsin, incorporated as an entity of the Methodist Church. Defendant in this case is the Wisconsin Conference Board of Trustees of the United Methodist Church, Inc., which oversees affiliated Methodist churches within the state. If the congregation of a Wisconsin Methodist church wishes to disaffiliate, the Conference claims ownership of the underlying church's property. Since "the congregation of Hebron Community Methodist Church has elected to leave the Methodist denomination," it seeks a declaration and injunctive relief allowing it to retain its claimed real and personal property. (*Id.* ¶ 42.)

Defendant has requested, and plaintiff agreed, that the court could take judicial notice of several of the church's founding documents. (dkt. #30.) The original deed for the property on which the church operates was written in 1855, when Joseph Powers gave a parcel of land to "Trustees in Trust for Methodist Episcopal Church and their successors in office." (Judicial Notice (dkt. #21-1) 3.) At the time of its inception in 1963, Hebron was deeded a second piece of land, abutting the original property. The 1963 deed notes that this new parcel is "immediately adjoining land conveyed by Joseph Powers and wife to the Trustees for the Methodist Episcopal Church," with "the grantee herein being

---

[1] Unless otherwise indicated, all facts in the background section are taken from plaintiff's amended complaint. (Dkt. #43.) In resolving a motion to dismiss under Rule 12(b)(6), the court takes all the factual allegations in the amended complaint as true and draws all inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007).

2

successor to the grantee named in the deed recorded" in 1855.  (Judicial Notice (dkt. #21-3) 1.)  Hebron's original articles of incorporation filed in 1963 further note that "the corporation shall support the doctrine, and it, and all its property, both real and personal, shall be subject to the laws, usages, and ministerial appointments of the Methodist Church."  (Second Request for Judicial Notice (dkt. #37-1) 2.)

Hebron adopted amended articles of incorporation in February 2022, just a month after filing this lawsuit.  (Am. Compl. (dkt. #43-3).)  The amended articles state that all property "now owned or hereafter by Hebron Community Methodist Church shall be solely held by the Church in its corporate name."  (*Id*. at 4.)  The Conference has now moved to dismiss Hebron's complaint, arguing that there is no basis to quiet title and the constitutional question should be avoided.[2]

OPINION

A motion to dismiss for failure to state a claim is designed to test the complaint's legal sufficiency.  *See* Fed. R. Civ. P. 12(b)(6).  While the court must "constru[e] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor," *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), a plaintiff must still allege sufficient facts to

---

[2] Hebron named defendant Staci Hoffman, Register of Deeds for Jefferson County, because "[u]pon information and belief, the enforcement of Wis. Stat. § 187.15(4) falls under the oversight and jurisdiction of the Register of Deeds . . . Thus, the Register of Deeds of Jefferson County, Wisconsin is a necessary party when challenging the constitutionality of Wis. Stat. § 187.15(4)."  (Am. Compl. (dkt. #43) ¶9).  Although defendant Staci Hoffman did not join in the Conference's motion to dismiss, she will also be dismissed from this case because the court finds it unnecessary to reach the constitutional question.

state a plausible claim for relief to survive a motion to dismiss. *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In addition to its multiple, federal constitutional claims, Hebron asserts a state law claim to the church's real property as well. Under Wisconsin law, "any person having an interest in real property may bring an action relating to that interest." Wis. Stat. Ann. § 840.03. Accordingly, Hebron requests "a declaration of rights that it is entitled to the quiet, exclusive, uninterrupted, and peaceful possession of the Subject Property without any interference from the Defendant Conference." (Am. Compl. (dkt. #43-3) ¶ 101.)

Regarding Hebron's constitutional claims, federal courts have been repeatedly advised to avoid finding laws unconstitutional if possible. *See Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (endorsing the principle that "[t]he Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of"); *Wisconsin Med. Soc'y, Inc. v. Morgan*, 2010 WI 94, ¶ 36, 328 Wis. 2d 469, 490, 787 N.W.2d 22, 33 (holding that "[s]tatutes enjoy a presumption of constitutionality. We indulge every presumption to sustain the law.") (internal citations omitted).

I.   **Preliminary Matters**

At the outset, the standard for how courts ought to view laws governing religious property was addressed by the Supreme Court in *Jones v. Wolf*, 443 U.S. 595 (1979), in which the Court found that judges should look at "neutral principles of law." *Id*. at 602. Specifically, courts may look at the "language of the deeds, the terms of the local church charters, the state statutes governing the holding of church property, and the provisions in

the constitution of the general church concerning the ownership and control of church property." *Id*. at 603. Thus, defendants' case for dismissal is narrowly based, simply arguing that the property will revert to the Conference no matter what, making any decision on the constitutionality of Wis. Stat. § 187.15 unnecessary. While Hebron again argues in response that, if Wisconsin's Methodist-specific property law was struck down as discriminatory, Hebron's property would not revert to the Conference, this argument does not hold water. As such, the court will assess the other neutral principles of law involved here, which all point in the same direction: under *any* of the neutral principles of law cited, Hebron clearly *would not* retain ownership of that property.

As an additional, preliminary matter, the parties argue that the court *must* determine the organizational structure of the broader church to effectively apply *Jones*. The two main organizational structures are hierarchical and congregational. A *congregational* church is "a religious congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority." *Watson v. Jones*, 80 U.S. 679, 722, 20 L. Ed. 666 (1871). In contrast, a *hierarchical* church is where "the religious congregation or ecclesiastical body holding the property is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization." *Id*. at 722–23.

Of course, this begs the question as to how much this distinction between church organizations would or should impact this case. In a concurrence written by Justice

Brennan in 1970, he noted that "the States may adopt the approach of *Watson v. Jones*, 13 Wall. 679, 20 L.Ed. 666 (1872), and enforce the property decisions made within a church of congregational polity 'by a majority of its members or by such other local organism as it may have instituted for the purpose of ecclesiastical government,' and within a church of hierarchical polity by the highest authority that has ruled on the dispute at issue." *Maryland & Virginia Eldership of Churches of God v. Church of God at Sharpsburg, Inc.*, 396 U.S. 367, 368–69 (1970).  This approach would suggest that this court *must* defer, in toto, to the decision of the generally recognized authority in a hierarchical church or to the majority vote of the congregation in a congregational church.  Thus, if Hebron were congregational and a majority of its members voted to leave the UMC and keep its property, then this court would arguably have to abide by that decision.

However, the Supreme Court framed the church organizational issue more narrowly in its later-decided *Jones* decision.  There, the Court noted that,

> the [First] Amendment requires that civil courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization. Subject to these limitations, however, the First Amendment does not dictate that a State must follow a particular method of resolving church property disputes. Indeed, "a State may adopt any one of various approaches for settling church property disputes so long as it involves no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith." At least in general outline, we think the "neutral principles of law" approach is consistent with the foregoing constitutional principles.

*Id.* at 602 (quoting *Maryland & Va. Churches*, 396 U.S. at 368) (internal citations omitted).

Thus, *Jones* appears to suggest that the distinction between hierarchical and congregational churches is most relevant when the dispute before the court involves

6

*doctrinal* matters, *and* "[i]f in such a case the interpretation of the instruments of ownership would require the civil court to *resolve a religious controversy*, then the court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body" of a hierarchical church. 443 U.S. at 604 (emphasis added). Absent a substantive doctrinal dispute, *Jones* also suggests that neutral principles of law should be applied, regardless of the church organization involved. Indeed, "[t]he primary advantages of the neutral-principles approach are that it is completely secular in operation, and yet flexible enough to accommodate all forms of religious organization and polity." *Id*. at 603.

The hierarchical distinction was important in *Jones* because the local congregation was itself divided into two factions that argued over who was the "true congregation" of the church, which would require the Court to determine which faction was following church law most faithfully. *Id*. at 609. Moreover, in order to avoid First Amendment entanglement, the Supreme Court held that Georgia courts must "give deference to the presbyterial commission's determination of that church's identity" due to its hierarchical nature. *Id*. Absent a doctrinal dispute, however, there is no indication that the court would apply something other than the neutral principles analysis to a property case. Indeed, the Supreme Court specifically explained that the neutral principles rule would allow hierarchical *or* congregational churches to "modify the deeds or the corporate charter to include a right of reversion or trust in favor of the general church . . . [or] the constitution of the general church can be made to recite an express trust in favor of the denominational church." *Jones*, 443 U.S. at 606.

7

Here, there is no need to deeply analyze actual church doctrine or decide whether Hebron is abiding by its religious duties. The question is not whether Hebron most fully encapsulates the teaching of the United Methodist Church, such that it should be considered the actual UMC. Instead, the question is whether the broader congregation has a claim to the property irrespective of the doctrinal disputes between Hebron and the UMC. Whatever that church structure, this court would still look to the *same set* of neutral principles, including the church constitution.[3]

## II. State Law Claim

As previously noted, courts can look at the "language of the deeds, the terms of the local church charters, the state statutes governing the holding of church property, and the provisions in the constitution of the general church concerning the ownership and control of church property" when evaluating neutral principles of law. *Id*. at 603. Neither party has cited any caselaw, nor has the court found any, applying these principles to resolve the issue of ownership of church property. Rather, the court in *Wisconsin Conf. Bd. of Trustees of United Methodist Church, Inc. v. Culver*, 2001 WI 55, decided to "resolve the church property dispute by resort to a state statute governing the holding of church property"

---

[3] Even if the precise structure of church organization between the parties were material, there is no question about the structure of the UMC, as the Wisconsin Supreme Court has already concluded that: "The UMC is organized in a hierarchical fashion. The Conference is its state-level organizational body. The relationship among the national, regional, and local levels of the denomination is governed by the Book of Discipline of the United Methodist Church, which sets forth the doctrinal law of the denomination." *Wisconsin Conf. Bd. of Trustees of United Methodist Church, Inc. v. Culver*, 2001 WI 55, ¶ 7. Moreover, Hebron alleges that it is "a subordinate member of some general church organization in which there are superior ecclesiastical tribunals," namely the state-level Conference and the national UMC. *Watson*, 80 U.S. at 722-23.

8

without looking at other potential neutral principles. *Culver*, 2001 WI 55, ¶ 22. However, in this case, all of the possible neutral principles point in the same direction. Thus, while the court will begin, as did the *Culver* court, with the state statutes applicable, the court will also explain, one by one, why Hebron has not pleaded facts sufficient to show that *any* neutral principle of law would allow Hebron to retain its property after disaffiliation.

### A. Wisconsin Statutes

First, the court looks to "state statutes governing the holding of church property." *Jones*, 443 U.S. at 603. More specifically, of course, the challenged statute applies only to Methodist church property and states that

> Whenever any local Methodist church or society shall become defunct or be dissolved the rights, privileges and title to the property thereof, both real and personal, shall vest in the annual conference and be administered according to the rules and discipline of said church.

Wis. Stat. § 187.15(4). There is a dearth of precedent regarding this specific religious property statute, or even the constitutionality of religious property statutes more generally. Still, the Wisconsin Supreme Court explicitly found in *Culver* that it may apply § 187.15(4) under a neutral principles analysis, drawing on an oft-cited concurrence from Justice Brennan. 2001 WI 55 at ¶ 22 (citing *Maryland & Va. Churches*, 396 U.S. at 367 (Brennan, J., concurring) (suggesting that states may resolve disputes through "the passage of special statutes governing church property arrangements")). Moreover, unless found to be unconstitutional, neither party disputes that this statute gives ownership of the disputed church property to the Conference in the case of plaintiff Hebron's disaffiliation.

9

Alternatively, if Wis. Stat. § 187.15(4) were found unconstitutional, and therefore unenforceable, the court would *instead* apply Wis. Stat. § 187.08, which is the general property rule for Wisconsin religious organizations and does not single out Methodist denominations in particular. However, that statute simply orders that, for any dissolved religious society, "the title to such real estate so owned by such defunct society shall be vested in such corporation of the same religious denomination next higher in authority in such denomination." Wis. Stat. Ann. § 187.08. In *Culver*, the Wisconsin Supreme Court also held that disaffiliation from the Methodist Conference constitutes a dissolution under Wis. Stat. § 187.08. *Culver,* 2001 WI 55 at ¶ 33. Upon disaffiliation, a plain reading of this statute would then also require Hebron to relinquish its property to its former denomination, which would be the Conference. Either way, Hebron would lose ownership of all church property. Hebron does not argue that all statutes regulating church property are unconstitutional -- only statutes which single out particular religions. Thus, even if the statute Hebron so strenuously challenges were found unconstitutional, Hebron would *still* lose title to the property.

Finally, as in *Culver*, the court also finds no need to evaluate any other, neutral principles. *See* 2001 WI 55 at ¶¶ 21-22 ("we may base our determination upon any number of neutral legal principles . . . In the case at hand we resolve the church property dispute by resort to a state statute governing the holding of church property."). The court will assess the other argued neutral principles, though, to emphasize that Hebron has not pled facts sufficient to justify relief under any neutral principle.

B. **Wisconsin Common Law**

Second, although this reasoning above is enough to justify granting defendant's motion to dismiss, it is worth noting that Hebron's state law hurdles would not end even if it sought to amend, seeking to void § 187.08 as well. On the contrary, without any statutory framework, Wisconsin law directs this court next to look to "the provisions in the constitution of the general church concerning the ownership and control of church property." *Jones*, 443 U.S. at 603. Here, that is the Book of Discipline, which Hebron expressly adopted as its governing document in its 1963 certificate of incorporation. (Am. Compl. Ex. 2 (dkt. # 43-2) 1.) Among its provisions, the Book of Discipline explicitly states:

> All properties of United Methodist local churches and other United Methodist agencies and institutions are held, in trust, for the benefit of the entire denomination . . . This trust requirement is an essential element of the historic polity of The United Methodist Church or its predecessor denominations or communions and has been a part of the *Discipline* since 1797 . . . The trust is and always has been irrevocable.

(Am. Compl. Ex. 4 (dkt. # 43-4) 5.)

In *Jones*, the Supreme Court recognized that churches "can specify what is to happen to church property in the event of a particular contingency, or what religious body will determine the ownership in the event of a schism or doctrinal controversy" through constitutions or reversionary clauses. 443 U.S. at 603. Since this segment of the Book of Discipline does just that, Hebron would again lose title to its property in the case of disaffiliation from the greater Conference.

11

Hebron makes a feeble argument that the Book of Discipline's trust clause would not control: "the Book of Discipline Trust Clause is not enforceable as either an express trust, as stated in its 1963 Articles of Incorporation as amended in 2022, or implied trust, as no reference to the trust clause is set forth in the deed." (Pl.'s Opp'n. (dkt #57) 19.) At best, this statement amounts to a mere legal conclusion that plaintiff does not undergird with factual allegations or legal support, creating no obligation for the court to accept it as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). Additionally, Hebron's statement ignores the fact that *both* the original 1855 and later 1963 deeds *do* explicitly mention that the property is held in trust for the Methodist Church. To the extent that Hebron amended its Articles of Incorporation in 2022, there is *nothing* alleged that would support Hebron's suggestion that it could unilaterally amend, much less dissolve that trust, which was held for the benefit of the broader church. Again, to the contrary, in terms of precedential decisions involving the United Methodist Church, the United States Supreme Court wrote approvingly in *Jones* of the Georgia Supreme Court applying neutral principles to find that "the constitution of The United Methodist Church, its Book of Discipline, contained an express trust provision in favor of the general church. On this basis, the church property was awarded to the denominational church." 443 U.S. at 600–01.[4]

---

[4] While the Court's *Jones* decision ultimately vacated and remanded the Georgia Supreme Court's ruling, that was because its underlying opinion failed to note the "significant complicating factor" that the local congregation itself had splintered into factions and *not* because Georgia's reliance on the Book of Discipline was misplaced. 443 U.S. at 606.

12

Given that the Book of Discipline has an express trust provision in favor of the church, therefore, this neutral principle would again give title to the broader church in the event of disaffiliation.

### C. Wisconsin Trust Law

Finally, even if there were no statutory framework for religious property *and* no Book of Discipline, the court would next turn to the relevant neutral principle of law available. Here, that would be the general, common law of trust, which in Wisconsin, just as in Georgia, "requires a civil court to examine certain religious documents, such as a church constitution, for language of trust in favor of the general church." *Jones*, 443 U.S. at 604. Specifically, any trust would have to be legally cognizable, as "[t]he method relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges." *Id.* at 603.

Under Wisconsin law, "[t]he burden of proof as to the existence of a trust rests on the party who alleges it." *Truelsch v. Nw. Mut. Life Ins. Co.*, 186 Wis. 239, 360, 202 N.W. 352, 360 (1925) (quoting 26 R. C. L. 1368). "The formation of a trust requires three elements: (1) trustees who hold property and are subject to equitable duties to deal with the property for the benefit of others; (2) beneficiaries to whom the trustees owe these equitable duties; and (3) trust property that is held by the trustees for the beneficiaries." *MacLeish v. Boardman & Clark LLP*, 2019 WI 31, ¶ 53, 386 Wis. 2d 50, 71, 924 N.W.2d 799, 809. Additionally, "[t]he intention to create a trust must be clear, and the writing employed must be reasonably certain in its material terms." *Otjen v. Frohbach*, 148 Wis. 301, 134 N.W. 832, 835 (1912).

13

In response to this argument in defendants' motion to dismiss, Hebron reasonably argues that since the burden of proving a trust is on defendants, they cannot prevail on the pleadings. (Pl.'s Opp'n. (dkt #57) 12.) However, the court would *only* need to evaluate the legal sufficiency of the trust if *all* of the previous neutral principles were unavailable. Here, although the court's controlling analysis ends at the general religious property statute, Wis. Stat. § 187.08, the court notes each neutral principle that are (or at least, almost certainly are) against Hebron's claim to emphasize its futility without definitively finding the trust elements present.

Finally, for the sake of thoroughness, Hebron's argument for why no trust exists is that "there is nothing in the deeds held by Hebron Community Methodist Church that indicates an intent on the part of the grantor to give the Wisconsin Conference a property interest in the Subject Property." (Am. Compl. (dkt. #43) ¶5.) Even with the limited documents properly considered at the pleading stage, that is simply not true, as Hebron's founding documents noted that the property was held in trust for the broader church as far back at the 1800s.

Hebron also attempts to argue against the glaring existence of a trust by asking the court to narrow its view to the modern title search alone, presumably after realizing that every other document submitted for judicial notice explicitly references a trust. (Pl.'s Opp'n. (dkt #57) 11) ("Since the deeds are not ambiguous, the Court need not consider extrinsic evidence."). However, each exhibit provided and referenced by the parties at the very least contains *reference* to the trust clauses that give the UMC a beneficial interest in the property. Notably, the legal description of the property in Hebron's title search refers

14

to the "immediately adjoining land conveyed by Joseph Powers and wife to the *Trustees for the Methodist Episcopal Church* by a deed dated April 12, 1854 and recording in the office of the Register of Deeds for Jefferson County, Wisconsin, in Vol 16 of Deeds on Page 528, -- the grantee herein being the successor to the grantee named in the deed recorded in Vol 16 of Deeds on Page 528." (Am. Compl Ex. 1 (dkt. #43-1) 5) (emphasis added). This is also the definition of the property Hebron itself cites for the amended complaint. (Am. Compl (dkt. #43) ¶ 4.)

In short, while the court need not reach these trust law arguments as the specific, neutral principles of statutes *and* the Book of Discipline are dispositive, even Hebron's arguments against a general trust are wholly unpersuasive, which is likely why Hebron focuses on the property's potential reversion to the UMC on Wis. Stat. § 187.15(4) alone. As set out above, however, it should now be plain that any method the court might apply under Wisconsin law returns to the same conclusion: the church property at issue is held in trust for UMC, to which it reverts in cases where the congregation disaffiliated. Looking at Wis. Stat. § 187.15(4), which solely applies to Methodist churches, the property would revert. The property would also revert under Wis. Stat. Ann. § 187.08, which governs property disputes for any religious organization not singled out in other areas of the law. Looking to the Book of Discipline, Hebron's property again reverts. And even if the court ignored the statutes and Book of Discipline altogether and simply relied on principles of trust law, the church property has all the indications of being held in trust.

As such, Hebron has *no* alleged state law claim upon which relief could be granted under Wis. Stat. Ann. § 840.03, as there is no circumstance under which the property

could remain with Hebron in the case of disaffiliation, even taking Hebron's alleged facts as true and not deciding the third fallback position under Wisconsin common law of trust. Said another way, while the court does "constru[e] the complaint in the light most favorable to the plaintiff," there is quite plainly no legal basis for Hebron's claim of ownership to prevail under Wisconsin law, whether or not the challenged statute is unconstitutional. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009).

### III. Constitutional Questions

Finally, the court looks to Hebron's main constitutional argument, which includes the suggestion that the federal constitutional questions should be resolved before addressing the question of Hebron's actual, legal ownership of the property, as Wis. Stat. § 187.15(4) has improperly been regarded as a neutral principle of law. (Pl.'s Opp'n. (dkt #57) 14.) However, this goes against both the Supreme Court's and the Seventh Circuit's repeated guidance to "pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Ashwander*, 297 U.S. at 347; *see also United States v. Goodwin*, 717 F.3d 511, 525 (7th Cir. 2013). "Any other indeed might have put an end to or seriously impaired the distinctively American institution of judicial review." *Rescue Army v. Mun. Ct. of City of Los Angeles*, 331 U.S. 549, 572 (1947).

Hebron also suggests that "even if the Court agrees with the Conference and finds that the Conference has a trust interest in the Hebron's current property, the constitutionality of Wis. Stat. § 187.15(4) still remains ripe for adjudication as Hebron's right to acquire additional real and personal property will continue to be impaired by an

16

unconstitutional statute that vests the annual conference with authority to lay claim to it." (Pl.'s Opp'n. (dkt #57) 21-22.) That argument, though, depends entirely on a hypothetical, future situation in which Hebron attempts to acquire more land, which is not before the court. If later property acquisition raises a constitutional question once again, Hebron is welcome to file another case. Until then, the court declines to address a state statute's constitutionality unless required to by the facts and law before it.

Here, the constitutional question is entirely irrelevant to whether Hebron could get relief, making a deep dive into the constitutionality of Wis. Stat. § 187.15(4) highly disfavored. Whether or not Wisconsin's congregation-specific property statutes are constitutional certainly raises interesting questions, particularly given recent decision by the Supreme Court addressing both Establishment and Religion Clauses of the United States Constitution. However, that issue simply is not implicated by the case before this court.

ORDER

IT IS ORDERED that:

1) Defendant Wisconsin Conference Board of Trustees of the United Methodist Church, Inc.'s motion to dismiss (dkt. #52) is GRANTED.

2) Defendants Staci Hoffman and Wisconsin Conference Board of Trustees of the United Methodist Church, Inc. are DISMISSED. The clerk of court is directed to terminate them as defendants and close the case.

Entered this 25th day of July, 2022.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge